**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JUSTIN C. MUSTAFA,<br>*Plaintiff*,<br><br>v.<br><br>CAPTAIN STANLEY, ET AL.<br>*Defendants*. | No. 3:19-cv-1780 (VAB) |

**INITIAL REVIEW ORDER**

      Justin Mustafa ("Plaintiff), an inmate formerly housed at MacDougall-Walker Correctional Institution ("MacDougall") and Garner Correctional Institution ("Garner") in the custody of the Department of Correction ("DOC"), has sued Captain Stanley and CCS[1] Ebonie Suggs at MacDougall; and Correction Officer Byars, Correction Officer Pelitier, and Lieutenant Swan at Garner for civil rights violations under 42 U.S.C. § 1983. Compl., ECF No. 1 (Nov. 8, 2019). On December 18, 2019, Magistrate Judge Garfinkel granted Mr. Mustafa's motion to proceed *in forma pauperis*. Order, ECF No. 8 (Dec. 18, 2019).

      In addition to the claims of assault and obstruction of justice, Compl. at 2, Mr. Mustafa's Complaint may be construed to allege violations of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

      For the following reasons, Mr. Mustafa's claims of violations under the Eighth Amendment, and the Fourteenth Amendment, as well as for assault will proceed, while all other claims will be dismissed.

---

[1] *See Stimpson v. Comm'r Corr. Office*, No. 3:16-cv-520 (SRU), 2017 WL 326314, at *4 (D. Conn. Jan. 23, 2017) (referring to Department of Corrections employees with "CCS").

I.    FACTUAL AND PROCEDURAL BACKGROUND

  A.    Factual Allegations[2]

On December 12, 2018, Mr. Mustafa arrived at MacDougall from Souza-Baranowski Correctional Center in Massachusetts, having been transferred under an interstate corrections compact agreement. Compl. ¶ 1.

Upon his arrival, he allegedly had to undergo a classification process, and Captain Stanley allegedly informed him about a hearing scheduled to determine his need for sex offender treatment. *Id.* ¶¶ 2–3. Mr. Mustafa allegedly had not been required to participate in sexual offender treatment in Massachusetts; had no criminal cases in Connecticut; had not been serving time for any sexually-related crimes; and had not been a convicted sex offender. *Id.* ¶¶ 4–5. After a hearing, allegedly held without his attorney, Mr. Mustafa allegedly received a sex offender classification score based on non-conviction information. *Id.* ¶¶ 8–10.

On March 1l, 2019, Mr. Mustafa allegedly arrived at Garner. *Id.* ¶ 11. At Garner, he allegedly experienced "problems" with other inmates and staff due to his sex offender status. *Id.* ¶ 12. On May 25, 2019, Officer Byars allegedly harassed him verbally and, after allegedly denying him dinner, brought Mr. Mustafa a "special food tray" which Mr. Mustafa believed to be contaminated. *Id.* ¶¶ 13–16. After Mr. Mustafa allegedly refused the meal, Officer Byars allegedly stabbed his left hand with the trap door key and punctured his middle finger all the way through. *Id.* ¶¶ 18–19.

Officer Byars then allegedly used a trap door to break his hand. *Id.* ¶ 20. But Mr. Mustafa allegedly freed his hand while Officer Byars casually walked back to the officer station. *Id.* ¶ 21. Officer Byars allegedly refused to notify a supervisor, but medical staff and Lieutenant Swan

---

[2] All factual allegations are drawn from the Complaint. Compl. ¶¶ 1–32.

allegedly arrived due to Mr. Mustafa's requests. *Id.* ¶ 22. Medical staff allegedly determined that Mr. Mustafa's injuries were severe enough to warrant a hospital visit. *Id.* ¶ 23. Lieutenant Swan allegedly refused to permit police notification about this assault. *Id.* ¶ 24.

On June 26, 2019, Officer Pelitier allegedly also threw a cup of juice into Mr. Mustafa's face. *Id.* ¶ 27. Lieutenant Swan allegedly refused to report Officer Pelitier's conduct. *Id.* ¶ 29. He allegedly told Mr. Mustafa that he and Officers Byars and Pelitier were all friends, and that Mr. Mustafa would see no relief because he was in charge of the investigation. *Id.* ¶¶ 29–30.

Mr. Mustafa has allegedly been diagnosed with long-lasting ulnar nerve damage and has been referred to an orthopedic hand specialist at UConn Hospital. *Id.* ¶¶ 31–32. He allegedly still has no feeling in two of his fingers and wrist. *Id.* ¶ 32.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III. DISCUSSION

The Court construes Mr. Mustafa's Complaint liberally to allege claims based on violation of his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments, in

4

addition to his stated claims of assault and obstruction of justice. Mr. Mustafa has not specified the relief sought or whether Defendants are sued in their official or individual capacities. Because Mr. Mustafa makes no requests for injunctive or declaratory relief, the Court construes Plaintiff's Complaint to assert claims against Defendants only in their individual capacities for damages.[3]

### A.    The Fourteenth Amendment Due Process Claim

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. In determining whether an incarcerated individual has stated a procedural due process claim, a court "first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

The Second Circuit has held that the improper classification of an inmate as a sex offender may have a stigmatizing effect which implicates a liberty interest for purposes of due process. *Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010) (An inmate claimed that prison officials wrongfully assigned him a level-3 sexual treatment needs score even though he had not been convicted of a sexual offense. The Second Circuit found that his defamation claim, although typically a state-law claim, rose to constitutional dimension).

Thus, in order to state a due process violation, a plaintiff must "demonstrate a stigmatizing statement plus a deprivation of a tangible interest." *Id.* at 81 (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)); *see also Moore v. Chapdelaine*, No. 3:15-CV-775 (VAB), 2018 WL 638995, at *6 (D. Conn. Jan. 31, 2018). "There are two components

---

[3] This Initial Review Order does not preclude Mr. Mustafa from seeking to amend his Complaint if he believes the Court has misconstrued the allegations regarding his federal constitutional claims.

5

to a 'stigma plus' claim." *Moore*, 2018 WL 638995, at *6. Mr. Mustafa first must establish the "'stigma' by demonstrating 'the utterance of a statement sufficiently derogatory to injure [his] reputation that is capable of being proved false, and that [he] claims is false.'" *Id.* (quoting *Vega*, 596 F.3d at 81). Mr. Mustafa must next demonstrate the "'plus,' 'a material state-imposed burden or state-imposed alteration of [his] status or rights.'" *Id.* (quoting *Vega*, 596 F.3d at 81). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Mr. Mustafa's allegations concerning his sex offender classification against Captain Stanley and CCS Suggs sufficiently raise due process concerns for now. Mustafa alleges that he was not a convicted sex offender, although he states that his sex offender classification was based on non-conviction information. Compl. ¶ 10.

For now, this due process claim will not be dismissed.

### B. The Sixth Amendment Right to Counsel Claim

The Sixth Amendment is only applicable to criminal prosecutions.[4] *See Sash v. Zenk,* 439 F.3d 61, 63 (2d Cir. 2006) ("Prison disciplinary hearings are not treated as 'criminal' for

---

[4] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

purposes of the Sixth Amendment."); *Gilliam v. Black*, No. 3:18-cv-1740 (SRU), 2019 WL 3716545, at *6 (D. Conn. Aug. 7, 2019) (stating the Sixth Amendment applies only to criminal prosecution).

Mr. Mustafa complains that he was not allowed to have counsel at the sex offender classification hearing. To the extent that he asserts a Sixth Amendment claim based on his lack of counsel at his classification hearing, this claim must fail because Mr. Mustafa has not alleged facts suggesting that the hearing was part of a criminal prosecution.

Accordingly, this claim will be dismissed.

### C. The Eighth Amendment Misuse of Force Claims

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *see also Hudson v. McMillian*, 503 U.S. 1 (1992) (establishing the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (analyzing both an objective and subjective component of an Eighth Amendment claim) (citing *Hudson*, 503 U.S. at 6–7). When an inmate claims that excessive force has been used against him or her by a prison official, he or she has the burden of establishing both an objective and subjective component to his claim. *See id.* at 105.

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). A *de minimis* use of force will rarely be

sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (internal quotation marks omitted) (quoting *Hudson*, 503 U.S. at 9–10). It is the force used, however, not the injury sustained, that "ultimately counts." *Id.* A malicious use of force constitutes a *per se* Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).

The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *See Wilkins*, 559 U.S. at 37 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires a showing that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The relevant factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

### 1. **Officer Byars**

For purposes of this initial review, Mr. Mustafa has stated a plausible Eighth Amendment misuse of force claim against Officer Byars. Objectively, his allegations that he required medical attention in a hospital and that he has a permanent injury suggest that Officer Byars's alleged use

of force may have gone beyond contemporary standards of decency. *See* Compl. ¶¶ 23, 31, 32. Subjectively, Mr. Mustafa's allegations—that Officer Byars assaulted him following verbal harassment and denial of his dinner and that Officer Byars walked away casually after the assault and refused to call for medical assistance—suggest that Officer Byars was motivated by malice rather than a good faith effort to maintain discipline. *See id.* at ¶¶ 13–21.

Accordingly, the Court will permit the Eighth Amendment misuse of force claim against Officer Byars to proceed.

### 2. Officer Pelitier

Mr. Mustafa's allegations against Officer Pelitier also present a plausible claim of misuse of force.

Construing the allegations most favorably to Mr. Mustafa, a correction officer's intentional act throw food at an inmate is more than a *de minimus* use of force and sufficiently alleges a transgression of contemporary standards of decency. *See* Compl. ¶ 27. Officer Pelitier's alleged rude comments before this incident are sufficient, at this stage, to support the allegation that malice rather than legitimate penological concerns motivated his actions. *See id.* ¶¶ 26–27. "'[T]he malicious use' of more than *de minimis* force 'to cause harm' is a *per se* violation of the Eighth Amendment[.]" *Fabricio v. Annucci*, 790 F. App'x 308, 310–11 (2019) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)).

Accordingly, the Court will permit the Eighth Amendment misuse of force claim against Officer Pelitier to proceed.

### 3. Lieutenant Swan

Mr. Mustafa has alleged that Lieutenant Swan refused to act on claims of misconduct by other correctional officials, refused to assist him with filing a report, and told him that no relief

would be forthcoming. Compl. ¶¶ 24, 28, 29, 30. These allegations sufficiently raise an inference that Lieutenant Swan had notice of Officers Byars and Pelitier's misconduct but failed to remedy their misconduct. *See Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019) (supervisory officials who were informed of violation but failed to remedy the violation may be held liable); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (describing the ways in which a supervisory defendant may be held liable under Section 1983).[5]

Accordingly, Mr. Mustafa's claims of Eighth Amendment violations based on misuse of force may proceed against Officer Byars, Officer Pelitier, and Lieutenant Swan. The Court will also permit the supplemental state common law claims for assault to proceed against Officer Byars and Officer Pelitier at this time.

### D.    The Eighth Amendment Deliberate Indifference to Medical Needs Claim

Deliberate indifference to serious medical needs occurs when an inmate faces a substantial risk of serious harm and a prison official disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both a serious medical need and a sufficiently culpable state of mind by the defendants. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("[T]he Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat 'a prisoner's *serious* illness or injury' resulting in the infliction of unnecessary pain and suffering." (quoting *Estelle*, 492 U.S. at 105)).

---

[5] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Without further Second Circuit guidance on this issue, however, the Court assumes for purposes of ruling on this motion that the categories outlined in *Colon* remain valid.

Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

The Court construes Mr. Mustafa's allegations as asserting an Eighth Amendment claim based on Officer Byars's deliberate indifference to his medical needs. Mr. Mustafa has sufficiently alleged both the objective and subjective elements. He has alleged a serious injury requiring medical treatment in a hospital and Officer Byars's knowledge of and failure to address his need for medical assistance. *See Shand v. Chapdelaine*, No. 3:17-cv-1947 (JCH), 2018 WL 279980, at *3 (D. Conn. Jan. 3, 2018) (permitting deliberate indifference claim to proceed based on denial of medical care, including treatment for asthma after chemical agent exposure, following assault by correction officers).

Construing these allegations most liberally in favor of Mr. Mustafa, the Court will permit this Eighth Amendment claim of deliberate indifference to medical needs to proceed against Officer Byars.

### E.     The Eighth Amendment Conditions of Confinement Claim

Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832–33 (internal quotation marks and citations omitted).

11

In this context, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Farmer*, 511 U.S at 834 (internal quotation marks and citations omitted). Additionally, an inmate must allege that the prison officials possessed culpable intent; that is, that the officials knew of a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837.

The Eighth Amendment protection requires that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 115 (2d Cir. 1983). For claims of food tampering, a plaintiff must allege that he suffered an actual injury. *See Abreu v. Farley*, No. 6:11-CV-06251 (EAW), 2019 WL 1230778, at *9 (W.D.N.Y. Mar. 15, 2019) (noting an allegation that defendants tampered or spit on food without more is insufficient to state an Eighth Amendment claim) (collecting cases); *Calvin v. Schmitt*, No. 15 CV-6584 (NSR), 2017 WL 4280683, at *5 (S.D.N.Y. July 7, 2017) (noting that mere allegation of food tampering without allegation of actual injury is insufficient to establish Eighth Amendment claim) (collecting cases).

Mr. Mustafa alleges that his food "might" have been contaminated because Officer Byars had characterized his dinner as "a special tray." *Id.* ¶ 16. This claim, however, is insufficiently conclusory and lacks any allegation that Mr. Mustafa sustained any injury. *See Rasheen v. Adner*, 356 F. Supp. 3d 222, 241 (N.D.N.Y. 2019) (dismissing claim based on inmate's failure to allege that he suffered injury).

Because he has not established sufficiently serious deprivation to satisfy the objective element of the Eighth Amendment analysis, Mr. Mustafa has not alleged a plausible Eighth Amendment claim based on possible contamination to his food.

### E. The Obstruction of Justice Claim

Under federal law, obstruction of justice is a criminal offense and the criminal statutes governing obstruction of justice do not provide for a private right of action. *See* 18 U.S.C. §§ 1501–21; *Brown v. State Farm Fire & Cas. Co.*, No. 3:11-cv-1435 (JBA), 2013 WL 951726, at *3 n.2 (D. Conn. Mar. 12, 2013). Research has revealed no civil cause of action for obstruction of justice under Connecticut law. *See Williams v. Hartford Police Dep't*, No. 3:15-cv-933 (AWT), 2017 WL 11448086, at *7 (D. Conn. Sept. 18, 2017) (noting no basis to conclude there is a civil cause of action for obstruction of justice under Connecticut law).

Mr. Mustafa seeks to bring a state tort claim of obstruction of justice claim. But he fails to identify—nor could the Court identify—a cognizable civil cause of action for obstruction of justice. Absent a private right of action under either federal or state law for obstruction of justice, Mr. Mustafa's obstruction of justice claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### ORDERS

The Court enters the following orders:

(1) The case shall proceed on Mr. Mustafa's claims of violation of the Eighth Amendment based on misuse of force against Lieutenant Swan and Correction Officers Byars and Pelitier in their individual capacities for damages; and his claim of violation the Eighth Amendment based on deliberate indifference to his medical needs against Officer Byars. The Fourteenth Amendment due process claims against Captain Stanley and CCS Suggs will proceed for now. The state law assault claims against Officers Byars and Pelitier also shall proceed.

The Eighth Amendment conditions of confinement claim based on allegedly contaminated food is **DISMISSED**. The Sixth Amendment claims are **DISMISSED**. The obstruction of justice claim is **DISMISSED**.

If Mr. Mustafa can allege facts sufficient to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint by **July 24, 2020**.

(2) The Clerk shall verify the current work addresses for Lieutenant Swan and Officers Byars and Pelitier at **Garner Correctional Institution** with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **July 10, 2020**, and report on the status of the waiver request by **July 24, 2020**. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(4) Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **August 28, 2020**. If the defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26 through 37, shall be completed by **December 18, 2020**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **January 15, 2021**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a summary judgment motion by **February 5, 2021**. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Mustafa changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Mustafa must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Mustafa has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) Mr. Mustafa shall utilize the Prisoner Efiling Program when filing documents with the Court. Mr. Mustafa is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of June, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE