UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JUSTIN C. MUSTAFA : CIVIL NO. 3:19-cv-1780 (VAB)

V. :

CAPTAIN STANLEY, ET AL : FEBRUARY 26, 2022

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

I.    **INTRODUCTION**

The plaintiff is a former Massachusetts inmate who, pursuant to an interstate transfer, was in the custody of the Connecticut, Department of Correction ("DOC") for approximately nine months from December of 2018 to September of 2019. The plaintiff opposed his transfer to the DOC, and, by his own admission, made it "his goal" to do "whatever he could" to force Connecticut to send him back to Massachusetts. (Attachment C; Plaintiff's Deposition, pgs. 25-30). This included repeated incidents of disruptive behavior (resulting in 26 disciplinary tickets) including multiple acts of self-mutilation. (Id.). According to the plaintiff, all of these incidents were "smoke and mirrors" in which he would fake an injury or "pull medical stunts" which forced DOC to send him to an outside medical facility and spend money on that process. (Id.). The defendants maintain that the incidents set forth in plaintiff's Complaint are a couple examples of plaintiff's "smoke and mirrors" campaign. They now move for Summary Judgment on the entirety of the plaintiff's complaint.

## II.  <u>FACTS</u>

The plaintiff commenced this action as a *pro se* inmate[1] against several DOC officials. According to the court's Initial Review Order, three claims remain: (1) a Fourteenth Amendment due process claim against Captain Stanley and Correctional Counselor Suggs on the basis that the plaintiff's sex offender classification was based on non-conviction information (ECF #9, pgs 5-6); (2) an Eighth Amendment misuse of force claim against Correctional Officers Byars, Pelitier and Lieutenant Swan. (Id., pgs. 7-10); and (3) an Eighth Amendment claim of deliberate indifference to medical needs against Officer Byars. (Id., pg 10-11). The plaintiff's classification process was conducted at Walker Correctional Institution, following his transfer to DOC custody in December of 2018. The Eighth Amendment claims are based on two incidents which allegedly occurred on May 25 and 26, 2019, at Garner Correctional Institution (See Complaint.).

The defendants now move for summary judgment on all of the plaintiff's claims. First, for the two claims asserted against Defendant Byars, the evidence demonstrates that the plaintiff failed to properly exhaust his administrative remedies prior to bringing suit, as is required by the Prison Litigation Reform Act, ("PLRA"). Second, in regard to the claims against the other defendants, the evidence demonstrates that the plaintiff fails to state viable Constitutional claims. Moreover, the defendants are also entitled to qualified immunity from the plaintiff's claims.

## III.  <u>MOTION FOR SUMMARY JUDGMENT</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is therefore

---

[1] The plaintiff has since been assigned assigned counsel.

entitled to judgment as a matter of law.  See Rule 56(a), Fed.R.Civ.P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden "by showing---that is pointing out to the district court---that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002) Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," <u>Anderson,</u> 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000). Merely restating the conclusory allegations of a complaint may not be sufficient to successfully oppose a motion for summary judgment.  <u>Zigmund v. Foster,</u> 106 F.Supp.2d 352, 356 (D.Conn.2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  <u>Patterson v. County of Oneida, NY</u>, 375 F.3d 206, 218 (2d Cir.2004).  If there is any evidence in the record on a material issue from which  a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  <u>Security Ins. Co of Hartford v. Old  Dominion  Freight Line Inc.,</u> 391 F.3d 77, 83 (2d Cir.2004).  However, " '[t]he mere of existence of  a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff'.' " <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir.2004) (quoting <u>Anderson</u>, 477 U.S. at 252)).

**IV.**    **SUMMARY JUDGMENT IS APPROPRIATE ON THE PLAINTIFF'S CLAIMS AGAINST DEFENDANT BYARS BECAUSE THE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

The Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a) requires an inmate to exhaust administrative remedies prior to seeking relief in federal court. Porter v. Nussie, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed. 2d 12 (2002). The Supreme Court has held that inmates must exhaust administrative remedies before filing any type of action "about prison life" regardless whether or not the inmate may obtain specific relief he or she desires through the administrative process.  Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819 (2001). An inmate who fails to file an administrative grievance may not bring the claim in federal court.   Adekoya v. Federal Bureau of Prisons, No. 19-1473, 2010 U.S. app. LEXIS 9579, *4 (2d Cir. May 11, 2010) (barring inmate federal lawsuit where inmate failed to exhaust administrative remedies).

Furthermore, the PLRA requires "proper exhaustion" which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 83-84).

In Ross v. Blake, 136 S. Ct. 1850 (2016), the Supreme Court rejected the Judicially created special exceptions to the exhaustion requirement of the PLRA. See 136 S. Ct. at 1362 (recognizing that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."). The Court concluded that the PLRA includes a single "textual exception" – that an

inmate must only exhaust remedies that are "available" to him or her. Id. at 1858.
Thus, aside from the availability of remedies to a prisoner, there are "no limits on
an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" Id.
at 1856. The Supreme Court in Ross described three scenarios in which
administrative procedures are officially adopted by a prison facility but are not
capable of use to obtain relief for the conduct complained about, and therefore are
unavailable. Id. at 1859. First, an administrative remedy may be unavailable when
"it operates as a simple dead end—with officers unable or consistently unwilling to
provide any relief to aggrieved inmates." Id. Second, "an administrative scheme
might be so opaque that it becomes, practically speaking, incapable of use"
because an "ordinary prisoner can[not] discern or navigate it" or "make sense of
what it demands." Id. Third, an administrative remedy may be unavailable "when
prison administrators thwart inmates from taking advantage of a grievance process
through machination, misrepresentation, or intimidation." Id. at 1860.

It is well established that an inmate cannot "shoe-horn" legal claims into a federal
lawsuit for which he did not properly request administrative relief.  Toomer v. County of
Nassau, No.  07-CV-01495  (JFB),  2009 U.S. Dist.  LEXIS 38160, *23  (E.D.N.Y. May 5,
2009) (inmate must grieve prison acts of which he complains in his lawsuit); Turner v.
Goord,376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (authorizing an inmate to litigate a
federal lawsuit based on allegations that were never made at the administrative level
would make a "mockery of the exhaustion requirement.")

Failure  to  exhaust  administrative  remedies  pursuant  to  the  42  U.S.C.  §
1997e(a)  is  an  affirmative  defense.  See  Jones v. Bock,  549  U.S.  199,  215  (2007).
Thus, the defendants have the burden to prove that the plaintiff has not exhausted his

claim prior to filing this action. See <u>Johnson v. Mata</u>, 460 Fed. App'x 11, 15 (2d Cir. 2012) (recognizing that "[t]he defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment."). In the present case, the defendants raised exhaustion as an Affirmative Defense and now move for Summary Judgment on that defense.

The administrative remedies for the DOC are set forth in Administrative Directives 8.9 and 9.6. (Attachment A, DOC AD 8.9, 9.6). Thus, administrative remedies were "officially on the books" at the time of the incidents described in the complaint. <u>Ross v. Blake</u>, 136 S. Ct. at 1859. Administrative Directive 9.6(4)(A) states that all matters subject to the Commissioner's authority for which another remedy is not provided in subsections (B) through (I), are grievable using the Inmate Grievance Procedure outlined in Section 6 of the Directive. <u>Id</u>., p. 12. The plaintiff's claims in this case fall within matters that were grievable under the Inmate Grievance Procedure. Thus, administrative remedies were clearly available to the plaintiff regarding his claims.

The plaintiff's lawsuit concerns claims related to his DOC incarceration, which commenced in December of 2018, when he was transferred to the DOC, from Massachusetts. (See Complaint). At that time, DOC administrative grievance procedures required the plaintiff to first seek informal resolution of his complaint, in writing, through the use of an Inmate Request Form, prior to filing a grievance with a response from an appropriate department head to be made within 15 days. (DOC Administrative Directive 9.6 § 6 (A). If this fails to resolve the problem, the plaintiff is then required to file a grievance and attach the Inmate Request Form, containing the appropriate staff member's response, among other requirements. (<u>Id</u>.) ("The

6

grievance *must* be filed within 30 days of the occurrence or discovery of the cause of the grievance…" (Id.) The Unit Administrator then has 30 days from the filing date of the grievance to respond. (Id. at § 6 (I). If the inmate is unsatisfied with the response, he may appeal to the second level of review within five days after receipt of the decision. (Id. at § 6(k). The Level 2 response shall be in writing within 30 business days of receipt by the Level 2 Reviewer and shall include a statement of the remedy for the grievance, which is upheld or compromised, or the reason a grievance is denied or rejected. (Id., at §6(k)).If the inmate does not receive a response to the Level 2 grievance within 30 business days, the inmate can file for a Level 3 Review, which is made to the Commissioner, or designee. (Id., §6(L)).

In this case, it is evident that the plaintiff was well aware of the DOC grievance procedures. The evidence shows that he filed various inmate request forms and grievances and, in fact, properly exhausted his administrative remedies in regard to some of his claims. (See Attachment B; Kingsley Declaration and attachments). However, an analysis of the plaintiff's filings demonstrate that the plaintiff failed to properly exhaust his administrative remedies in regard to both of his claims against Officer Byars.

A. **Excessive Force Claim against Officer Byars.**

The plaintiff alleges that on May 25, 2019, at Garner CI, Officer Byars brought the plaintiff a "special food tray" and after the plaintiff refused the meal, Byars allegedly "stabbed his left hand with the trap door key and punctured his middle finger." (See Complaint ¶18-19). At his deposition, the plaintiff admits to holding the trap door open in

an attempt to "cause a disturbance." (Plaintiff's depo, pg. 55).[2]

The evidence demonstrates that the plaintiff did attempt to file a Level 1 Grievance in which he asserts that he was "assaulted" by Officer Byars on May 25, 2019. (Kingsley Declaration, ¶7, see also attachments, pgs #11-19). That Level 1 grievance is dated June 24, 2019 and was not received by DOC staff until June 26, 2019. (Id.). By disposition dated July 22, 2019, that Level 1 Grievance was rejected for the reason that it was not filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. (Id., ¶8). The plaintiff then filed a Level 2 Grievance, dated July 24, 2019, in which he asserted that he did, in fact, file the Level 1 Grievance on June 24, 2019, which was the 30th day after the incident of May 25, 2019. (Id., ¶9). In response to the plaintiff's Level 2 filing, DOC staff researched the plaintiff's claim and determined that grievances were collected on June 24th at 8:00 am, not collected on June 25th, and then collected again on June 26th at 10:20 am. (Id., ¶10). Therefore, it was possible, yet not verifiable, that the plaintiff filed his grievance on June 24th, after the 8:00 am collection. (Id.).

Therefore, pursuant to DOC Administrative Directive 9.6, Sec 6 K, the plaintiff's Level 2 Grievance was compromised. (Id., pg #15). According to that compromise, the plaintiff was allowed to resubmit his grievance within 5 days of the response and it shall be accepted as timely and given a response, based on the merits of the grievance.[3]

---

[2] While not at issue in this motion, the evidence shows that in response to the plaintiff holding the trap door open and causing a threat of an assault, Officer Byars struck the plaintiff's hand once. While the plaintiff claimed significant injury and insisted on medical treatment (consistent with his "smoke and mirrors campaign,") that treatment showed no fracture or necessity for any stiches. (Plaintiff's deposition, pgs. 66).

[3] The Level 2 Reviewer checked the box indicating: "You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered." This does not indicate that the plaintiff properly exhausted his remedies, nor is it inconsistent with the terms of the compromise, which was very clear and required the plaintiff to resubmit his grievance.. See Correa v. McLeod, 3: 17 – cv-1059, June 8, 2018 D. Conn (VLB)(Even if the disposition could be interpreted as a finding that the plaintiff timely complied with the administrative remedy procedure, such an interpretation would directly conflict with the written response to his Level 1 and Level 2 appeal); Solman v. Carl,

8

This Level 2 Disposition was dated September 5, 2019. (Id.). The plaintiff readily admits receiving this response to his Level 2 grievance and understood his obligation, according to the compromise, to re-submit the grievance within 5 days. (Plaintiff's deposition, pgs. 87-89). However, the plaintiff did not resubmit his grievance, or file anything in regard to the May 25, 2019 incident with CO Byars after the Level 2 disposition. (Kingsley Declaration, ¶12).

The analysis of this issue is straightforward. The plaintiff filed a Level 1 grievance which was initially deemed untimely and therefore, rejected. The plaintiff filed a Level 2 grievance, contesting the timeliness issue. Following investigation of that issue, DOC staff responded to the Level 2 grievance and offered a reasonable compromise, which allowed the plaintiff to resubmit his grievance within 5 days. This compromise would have satisfied the primary purpose of the exhaustion requirement which is to allow prison staff the opportunity to fully investigate the pertinent claims. See Espinal v. Goord, 558 F.3d 119, 128 (2d Cir 2013)(One of the benefits of exhaustion is to allow staff to fully investigate the inmate's complaints). The plaintiff failed to comply with the terms of the compromise. Accordingly, he failed to properly exhaust his administrative remedies in regard to this claim and Defendant Byars is entitled to summary judgment on this claim. See Woodford v. Ngo, 548 U.S. 81, 90 (2006)(A claim is not exhausted until the inmate complies with all administrative deadlines and procedures).

## B. **Medical Deliberate Indifference Claim against Defendant Byars**

2018 U.S. Dist. LEXIS 86424, (D. Conn. May 23, 2018 (JCH)(Here, there is no issue of material fact as to whether the checked box deluded the plaintiff into believing that he had exhausted the claim because there remained steps for him to perform.); Vidro v. Erfe, 2019 U.S. Dist. LEXIS 165744 (D. Conn. Sept. 26, 2019)(checked box does not alter this conclusion); Mason v. Cruz, 2021 U.S. Dist. LEXIS 94950 (D. Conn. May 19, 2021)(it has been established that a bald statement from a prison official that an inmate has exhausted his administrative remedies is not dispositive if the inmate has not, in fact, done so.)

The plaintiff alleges that after his "assault," Officer Byars refused to notify a supervisor. (See Complaint.). According to the District Court, this arguably showed Byars' knowledge of and failure to address his need for medical assistance. (IRO, pg. 3, 11). To the extent that this claim against Defendant Byars implicates the grievance requirements of DOC Administrative Directive 9.6, as discussed above, the plaintiff failed to properly exhaust his administrative remedies. [4] To the extent that the plaintiff's claim against Defendant Byars implicates the grievance requirements of DOC Administrative Directive 8.9, which governs medical issues, it is also clear that the plaintiff failed to properly exhaust his grievances. As detailed in the Declaration of Garner Nurse Nadeau, the plaintiff filed one medical grievance at Garner, concerning an unrelated medication issue. (Attachment D, Nadeau Declaration, ¶4-6). Accordingly, the plaintiff failed to exhaust his administrative remedies in regard to this claim.

In sum, Defendant Byars should be granted summary judgment on the plaintiff's two claims against him because the plaintiff failed to exhaust his administrative remedies.

## V.   THE PLAINTIFF RECEIVED ALL THE PROCESS HE WAS DUE IN REGARD TO HIS CLASSIFICATION

The plaintiff asserts a Fourteenth Amendment Due Process claim against Defendants Stanley and Suggs on the basis that the plaintiff's sex offender classification was based on non-conviction information. The plaintiff was transferred to the DOC, from Massachusetts custody, on December 12, 2018. Pursuant to the intake process for all DOC inmates, the plaintiff went through a classification process, at Walker CI which involved the assignment of "scores" for various

---

[4] In fact, the plaintiff's Level 1 and 2 grievances concerning Defendant Byars which are discussed above, do not reference any medical claims and would therefore fail to satisfy the requirement that an inmate grieve the specific acts of which he complains in his lawsuit. (Kingsley Declaration, attachments, pgs 12, 15).

categories, including sexual treatment need scores ("STN"). (Attachment E; Suggs Declaration, ¶3-5). The evidence demonstrates that the plaintiff received a hearing, with appropriate notice, concerning his STN score and that following the hearing (at which he participated and expressed his position), the plaintiff received an appropriate STN score. In sum, the plaintiff received all of the process he was due. Alternatively, the two defendants involved in this claim (Suggs and Stanley) are also entitled to qualified immunity.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Due Process Clause itself" or "from an expectation or interest created by state laws or policies." Id. To state a procedural due process claim, the plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017).

"The Supreme Court and the Second Circuit alike have recognized that the Due Process Clause protects against the Government's use of a false stigma that alters a person's legal status or rights in a tangible manner." Petitpas v. Martin, No. 3:17-cv-1912 (JAM), 2018 U.S. Dist. LEXIS 176916, at *7-*8, 2018 WL 5016997 (D. Conn. Oct. 15, 2018) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980), and Vega v. Lantz, 596 F.3d 77, 81-82 (2d Cir. 2010)). To succeed on a "stigma-plus" due process claim, a plaintiff must allege: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-imposed burden or state-imposed alteration of his or her rights or status [the plus]." Id. at *8 (quoting Vega, 596 F.3d at 81). This state-imposed alteration of status or burden must be in addition to the stigmatizing statement. Vega, 596 F.3d at 81. Deleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a "plus" under the "stigma plus" doctrine. Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004).

As a STN score hearing is not disciplinary in nature, it is subject to the "informal, non adversary procedures" articulated in Hewitt v. Helms, 459 U.S. 460, (1983) and Wilkinson v. Austin, 545 U.S. 209 (2005). Knight v. Semple, No. 3:18-cv-703 (SRU), 2020 U.S. Dist. LEXIS 68272, *9-*10 (D. Conn. April 20, 2020); Holley v. Cook, No. 3:20-cv170 (MPS) (D. Conn November 15, 2021). Thus, to satisfy such review, the inmate must receive some notice of the charges against him and an opportunity to present his views to the prison official charged with determining his STN score. Hewitt, 459 U.S. at 476. The final decision may "turn largely on purely subjective evaluations and on predictions of future behavior." Hewitt, 459 U.S. at 474; see also Proctor v. LeClaire, 846 F.3d 597, 609 (2d Cir. 2017).

Here, the plaintiff received the procedural protections recognized in Hewitt. As the plaintiff's STN score was to be based in part on non-conviction information, he was provided a hearing on this issue. He received notification of his hearing on January 8, 2018. (Suggs declaration;' Classification packet, pg. 3).[5] As detailed in the notification form, the plaintiff was notified when his hearing would take place, and that it pertained to his STN score. (Id.) The form advised the plaintiff that he could provide information concerning his score to the hearing officer at the hearing, and informed the plaintiff that his 2013 conviction for Assault and Battery and the underlying Massachusetts police report would be considered at the hearing. (Id.) Clearly, the plaintiff was well-aware of the contents and allegations contained in the referenced police report. (Id.).

The plaintiff's hearing occurred on January 11, 2019. (Suggs Declaration; see also attached classification documents, pg. 4). At the hearing, the plaintiff was provided an opportunity to present his position on the STN score. He denied the allegations in the police report, specifically arguing that "the beastiality charges were dismissed" and that Massachusetts had not determined that he needed sex offender treatment. (Id.). The hearing officer noted that based on the 2013

---

[5] In fact, the plaintiff received notification of this hearing *prior* to January8, 2019 as the plaintiff writes in an inmate request Form, dated January 7, 2019 that he refused to take part in that "crazy little sex offender meeting." (Id., pg. 5).

conviction, and the information contained in the underlying police report, a STN score was warranted. (Id.). At the conclusion of the hearing, the plaintiff was assigned a score of 2VN.[6] (Id.). The plaintiff was advised of this decision and a form detailing the decision was presented to the plaintiff, who refused to sign it, and this refusal was acknowledged by a staff member. (Id.).

Based on the foregoing, it is clear that the plaintiff was provided the due process outlined in <u>Hewitt</u>. He was provided advance notification that he would have a hearing regarding designation of a STN score based on non-conviction information, and that the information at issue was contained in the Massachusetts police report underlying his 2013 conviction. At his hearing, he was provided an opportunity to present his views to the hearing officer, and it was clear from his approach to the hearing that he understood the nature of the information being considered. The plaintiff was also afforded an opportunity to appeal the decision and did so.[7]

The Massachusetts police report considered during the plaintiff's hearing certainly contained sufficient information to support a subjective evaluation and a prediction of future behavior leading to a STN designation of 2 VN. Indeed, the report contained a statement from the female victim that the plaintiff compelled her to engage in acts of beastiality with a dog. (Id., pgs. 10-14).

The plaintiff's chief complaint is that he was not convicted of any charge from Massachusetts, other than assault and battery, and that this somehow denied him due process. However, as is noted in the DOC classification manual, "nolled, acquitted, dismissed, or withdrawn information, which is part of another crime, may be used to determine need scores." (Suggs Declaration, ¶6). Sex "counseling may be appropriately mandated even when based on conduct that resulted in an acquittal at trial." <u>Steinmetz v.</u>

---

[6] The scores range from 1 to 5, with 1 being the least severe. (Suggs Declartion, ¶ 3).
[7] Though not required, the process afforded the plaintiff even complied with the more formal and adversarial procedural protections applicable to disciplinary hearings, as outlined in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974). Namely, he was provided advance written notice, an opportunity to present a defense, and a written statement of the evidence relied on and the reasons for the decision. See, e.g., <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985).

<u>Cabrera</u>, Docket No. 17-CV-1000, 2018 U.S. Dist. LEXIS 15930, at *6, 2018 WL 671282 (W.D.N.Y. Jan. 30, 2018); see also <u>Vega v. Lantz</u>, 596 F.3d 77,83 (2d Cir. 2010) (no due process violation in consideration of acquitted conduct where prison procedure permitted such consideration in development of sex treatment needs score).  In this instance, there was information considered by the STN hearing officer to support a subjective evaluation that the plaintiff demonstrated a history of problematic sexual behavior justifying a STN score of 2.  For these reasons, the evidence before the Court fails to establish that the plaintiff was denied due process in regard to his sex offender classification.[8]

Moreover, the plaintiff can not satisfy his burden to prove the "plus" part of a stigma plus claim.[9] The type of damage considered sufficient to constitute the "plus" cannot be abstract or speculative. See <u>Moore v. Chapdelaine</u>, 2018 U.S. Dist. LEXIS 16573 (VAB)(D. Conn. January 31, 2018). In fact, the evidence shows that the plaintiff suffered no adverse consequence, of any kind, as a result of his STN score. The plaintiff was not required to undergo any sex treatment as a result of this STN score, nor was his sentence (a Massachusetts sentence) impacted in any way (Plaintiff's Depo, pgs 44-45 (STN programming was never offered or declined) see also Exhibit E, Declaration of Osden (plaintiff's conditions of confinement and sentence were not impacted by STN score).

### VI.  THE PLAINTIFF'S EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT PELETIER FAILS, AS A MATTER OF LAW

The allegation against Defendant Peletier is that on May 26, 2019, he reached into the plaintiff's cell door through the trap and threw juice into the plaintiff's face. (See

---

[8] The defendants also maintain that the defendants involved in the classification claim are entitled to qualified immunity from this claim. This will be discussed.

[9] The defendants also maintain that the plaintiff can not satisfy  the "stigma" part of the test as the plaintiff has not proven that the allegations in the Massachusetts police report were false.

Complaint). At his deposition, the plaintiff asserted that the defendant used the trap door on the cell to throw in a "normal size" Styrofoam cup of "red or purple" juice into his cell. (Plaintiff's depo, pgs 73-77). The plaintiff alleges that some of the juice went on his upper torso, some went on his face, and some went on the floor. (Id.) The plaintiff states that he used his clothing to wipe himself off (Id.). The plaintiff does not allege that he was injured, or sought medical attention as a result of this incident. (Id.).

To be clear, defendant Pelitier disputes the plaintiff's allegation and maintains that this incident did not occur. Nonetheless, for purposes of this motion, even if plaintiff's allegation is assumed to be true, it does not assert a constitutional violation of the Eighth Amendment.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that "involve the unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estell v. Gamble, 429 U.S. 97, 102 (1976). An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim. Hudson v. McMillan, 503 U.S. 1, 6 (1992). To meet the objective component, the inmate must demonstrate that the defendant's conduct was "sufficiently serious" to have violated "contemporary standards of decency." Hudson, 503 U.S. at 8. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10.

In this instance, it is evident from the plaintiff's description of the alleged incident that the defendant's conduct was a de minimis use of force, intended to harass the

plaintiff, which does not rise to the level of a constitutional violation. Certainly, throwing a small cup of juice into an inmate's cell, while unprofessional and inappropriate, is not the sort of conduct that is "repugnant to the conscience of mankind." [10] Hooks v. Howard, 2010 U.S. Dist. LEXIS 30589 (N.D.N.Y March 30, 2010)(guard's actions of shoving food through food slot did not actually harm the plaintiff or pose a substantial risk of serious harm and did not violate the plaintiff's constitutional rights); Samuels v. Hawkins, 157 F.3d 557, 558 (8th Cir. 1998)(prison guard's actions of throwing a liquid at the plaintiff did not harm him in any way and was de minimus.). Fackler v. Dillard, 2006 U.S. Dist. LEXIS 61481 (E.D. Mich July 7, 2006)(Throwing a small cup of urine through an inmate's food slot resulting in urine splashing on the inmate undoubtedly constitutes a de minimus use of force.); McFadden v. Solfaro, U.S. Dist. LEXIS 5765 (S.D.N.Y. Apr. 23, 19980((Prisoner's claim that corrections officer regularly threw coffee, juice and water into his cell was not a triable cause of action under the Eighth Amendment.) Tafari v. McCarthy, 2010 U.S. Dist. 57936 *10 (N.D.N.Y, March 31, 2010)(Assuming defendant threw urine and feces on the plaintiff, while certainly repulsive, is not sufficiently severe to be considered "repugnant to the conscience of mankind.").

Accordingly, Defendant Peletier is entitled to summary judgment.


## VII. LIEUTENANT SWAN DID NOT HAVE PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTIONAL DEPRIVATION

The plaintiff claims that Lieutenant Swan refused to act on claims of misconduct by other correctional officials. According to the court's initial review order, these allegations

---

[10] Indeed, a proper comparison appears to be to a case of verbal harassment or profanity by a correctional official, as it is well established that such conduct, unaccompanied by an injury, no matter how inappropriate, unprofessional or reprehensible does not constitute the violation of any federally protected right and is therefore not actionable under §1983. See Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

sufficiently raise an inference that Swan had notice of Officers Byars and Pelitier's misconduct but failed to remedy that misconduct. (ECF # 9, pgs 9-10). In its initial review order, the District Court noted that this theory of liability against supervisor Swan may be suspect as *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." Id., fn 5. However, noting the lack of  Second Circuit guidance on the issue, the District Court assumed, for purposes of that order, that the categories for supervisory liability, outlined in <u>Colon v. Coughlin</u> remained valid. <u>Id.</u> However, following the district court's initial review order, the Second Circuit has clarified the standard to be applied to claims of supervisory liability. <u>Tangreti v. Bachmann</u>, 983 F.3d 609 (2d Cir. 2020). In <u>Tangreti</u>, the Second Circuit held that "after <u>Iqbal</u>, there is no special rule for supervisor liability. Instead, a plaintiff must plead and prove that "each Government-official defendant, through the individual's own individual actions, has violated the Constitution." <u>Id.</u> at 618 (quoting <u>Iqbal</u>, 556 U.S. at 676).

The plaintiff has not alleged that Lieutenant Swan, through his own individual actions, has violated the Constitution. Accordingly, this claim should be summarily dismissed against Lieutenant Swan.

## VIII.  <u>IN THE ALTERNATIVE, THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY</u>

Alternatively, notwithstanding the plaintiff's failure to establish that any of the defendants violated his constitutional rights, the defendants are further entitled to judgment in their favor as they are each entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>City of Escondido, Cal. v. Emmons</u>, 139 S.Ct. 500, 503 (2019) (citations omitted). Qualified immunity "affords government officials 'breathing room' to make reasonable— even if sometimes mistaken—decisions." <u>Distiso v. Cook</u>, 691 F.3d 226, 240 (2d Cir. 2012) (quoting <u>Messerschmidt v. Millender</u>, 565 U.S. 535, 553 (2012)). To overcome qualified immunity, a plaintiff must show 1) the defendant officials violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. <u>Taylor v. Barkes</u>, 135 S.Ct 2042, 2044 (2015) (citing <u>Reichel v. Howards</u>, 132 S.Ct. 2088, 2093 (2012)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what his is doing' is unlawful." <u>District of Columbia v. Wesby</u>, 138 S.Ct. 577, 589 (2018) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)). "To be clearly established, a legal principle must have a sufficiently clear founding in then-existing precedent [and t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." Id. at 589-90 (citations omitted).

The Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015); <u>City of Escondido</u>, 139 S. Ct. at 503. For courts to avoid defining rights too broadly, correct analysis requires that "the clearly established law must be 'particularized' to the facts of the case." <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (quoting <u>Anderson v. Creigthon</u>, 483 U.S. 635, 640 (1987)). "The dispositive question is 'whether the violative nature of particular conduct is clearly established." <u>Mullenix</u>, 136 S. Ct. at 308 (emphasis in original) (quoting <u>al–Kidd</u>, 563 U.S. at 742). "This inquiry must be undertaken in light of

the specific context of the case, not as a broad general proposition." Id. The qualified immunity analysis must be "particularized" in the sense that "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Doninger v. Niehoff, 642 F.3d 334, 345-46 (2d Cir. 2011). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." Id. at 345.

"The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (quoting Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010)). "Even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir. 2010); see also Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010). Qualified immunity applies regardless of whether the officials' error is "a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." Doninger, 642 F.3d at 353 (quotation and citation omitted). So long as a defendant "has an objectively reasonable belief that his actions are lawful," he "is entitled to qualified immunity." Swartz v. Insogna, 704 F.3d 105, 109 (2d Cir. 2013) (internal quotation marks omitted); Spavone v. New York State Dept. of Correctional Services, 719 F.3d 127, 134-35 (2d Cir. 2013).

First, in regard to the claim against Defendant Peletier, current jurisprudence fails to clearly establish that a correctional officer throwing a cup of juice into an inmate's cell, without causing any actual injury to the inmate, constitutes a Constitutional violation.

Therefore, Defendant Peletier would be entitled to qualified immunity. Second, in regard to the classification claim, as discussed, it is evident that the plaintiff received all of the process he was due. Moreover, as discussed by the District Court in <u>Holley v. Commissioner Cook, et al</u>, 3:20 cv 170 (November 15, 2021, MPS), it "remains unclear within the Second Circuit whether an inmate receiving a hearing to determine his STN score is entitled to the more demanding procedural requirements under *Wolff*" <u>Holley</u>, pg. 19. Due to this uncertainty in the law, like the correctional defendants in <u>Holley</u>, defendants Suggs and Stanley would be entitled to summary judgment. Additionally, it should be emphasized that Defendant Suggs, in conducting the STN hearing, and initially determining the plaintiff's STN score, relied on the DOC Administrative Directives and the Department of Correction Classification Manual, which clearly provide that non-conviction information may be used to determine an inmate's STN score. Accordingly, it was objectively reasonable for her to do so and she should be entitled to qualified immunity

For all of the foregoing reasons, the defendants should be granted summary judgment.

### IX. The Court Should Decline Supplemental Jurisdiction over State Claims

The defendants maintain that all of the plaintiff's federal claims should be summarily dismissed. Accordingly, this court should also decline to exercise supplemental jurisdiction over the plaintiff's state law claims. See <u>Rounseville v. Zahl</u>, 13 F.3d 625, 631 (2d Cir. 1994).

DEFENDANTS
STANLEY, et al

BY: /s/ Matthew B. Beizer
Matthew B. Beizer
Assistant Attorney General
Fed. Bar No. ct16304
110 Sherman Street
Hartford, CT  06105
Telephone No. (860) 808-5450
Fax No. (860) 808-5591
E-mail: Matthew.Beizer@ct.gov

## **CERTIFICATION**

I hereby certify that on February 25, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Matthew B. Beizer
Matthew B. Beizer
Assistant Attorney General