UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUSTIN C. MUSTAFA, | : | CIVIL NO. 3:19-CV-1780(VAB) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| C/O BYARS, | : | DECEMBER 20, 2024 |
| *Defendant.* | | |

**DEFENDANT'S FIRST OBJECTION TO THE LETTER AND PURPORTED "EMERGENCY" MOTION TO INTERVENE AND FOR IMMEDIATE DISCLOSURE FILED BY THE ACLU (Docs. 135; 137)**

The defendant objects to the ACLU's motion to intervene and for immediate disclosure (Doc. 137) and to their related letter (Doc. 135). The motion and letter are meritless. They seek for the Court to provide or "release" materials that the Court no longer possesses and that it destroyed 30 days after trial, in the normal course of business. The motion (Doc. 137) is also improperly designated as an "emergency" motion absent good cause or good faith basis. This prejudices the defense and limits the time that can be spent on briefing the issues. The Court should therefore allow the defendant the time from the original briefing schedule to respond more fully with a memorandum of law, until and including January 10, 2025. *See* (ORDER Doc. 135)(allowing the defendant until and including January 10, 2025, to respond).

Finally, even if the Court ordered (over objection) for the defendant to provide access to the video recordings to the ACLU, it must be in a limited, supervised, and

controlled review, given the safety and security justifications that served the basis for the Court's protective order (that still remains in place) controlling disclosure of the videos.

**1.    The ACLU failed to establish good cause for the purportedly "emergency" nature of its motion.**

The ACLU failed to establish good cause for the "emergency" designation of its motion, as required under Local Rule 7.6.  In fact, it appears the ALCU lacks good faith basis to designate the motion as an emergency motion under the Local Rules in the first place.  That matters here, as the Court set a briefing schedule on the issue after receiving and docketing the ACLU's letter addressed to the Chief Judge.  *See* (Doc. 135)(ORDER).  That briefing schedule allowed the defense until and including January 10, 2025, to respond.  (*Id.*)  Undersigned reasonably relied on that briefing schedule in scheduling and accounting for responding to the motion.  Now, the ACLU files an "emergency" motion at the close of business on Monday the week before Christmas, apparently just because the ALCU or its counsel does not feel like waiting.  They designate the motion as an emergency, but there is such good-cause justification for that in the motion.  This prejudices the defense, including providing them limited time to further vet, research, and brief the issues.[1]

---

[1]    Also, it is worth noting that the defendant does have current obligations and upcoming due dates in this very case.  This includes *ex parte* settlement memoranda due to Judge Spector on the December 26, 2024 and also a settlement conference scheduled for January 2, 2025.  *See* (Doc. 133).  Understandably and not surprisingly, the defense is spending its time and resources preparing for these proceedings.  The improper "emergency" designation by the ACLU interferes with

2

The ACLU may not act as it did in its bad-faith emergency designation, and it certainly cannot be rewarded for it.  Therefore, the Court should allow the defense the benefit of the original briefing schedule, and the Court should therefore allow and order that the defendant be allowed until and including January 10, 2025, to file a second objection and a memorandum of law in response to both the ACLU's letter (Doc. 135) and motion (Doc. 137).

**2.    The Court has already issued a protective order restricting the parties' use of the video recordings.**

Also, it appears the ACLU filed the wrong motion.  While the motion is styled as requesting for the Court to "release" the videos (Doc. 137 § 4 p. 9-11), their papers (Docs. 137; 135) are not actually asking the Court for access to the Court's materials.  Instead, it is really asking for the *parties* (not the Court itself) to provide access to the materials.  This is because the Court no longer has the materials in question.  As a matter of course, the Court retained the electronic versions of videos for 30 days following trial, before they were destroyed in the normal course of business.  The ALCU makes no representation that it sought the videos during that 30-day period, and it surely would have claimed otherwise if they had.  Therefore, the Court cannot grant the ACLU's request to release materials that the Court no longer possesses.

---

that and requires detracting from these and other pre-existing obligations in pending matters, and the ACLU does so improperly, without good cause, and without good faith basis for their improper emergency designation.

3

Concerning the parties' retaining of videos, that is subject to a protective order (Doc. 129). The Court granted the protective order, as the federal courts often and routinely do, given the obvious safety and security concerns that come with videos depicting the insides of prisons. (Docs. 129; 128); *see also, e.g.*, *Harris v. Livingston Cty.*, No. 14-CV-6260-DGL-JWF, 2018 WL 6566613, 2018 U.S. Dist. LEXIS 210509, *8 (Dec. 13, 2018)("allowing the dissemination of the video surveillance footage would put at risk the safety of corrections officers, other inmates, and the public." "[T]he court finds that there is good cause for a protective order preventing plaintiff disseminating the surveillance footage.")(citing *McMillen v. Windham*, No. 3:16-CV-558-CRS, 2018 U.S. Dist. LEXIS 15662, 2018 WL 652829, at *5 (WD Ky. Jan. 31, 2018)); *Edwards v. Middleton*, 2021 U.S. Dist. LEXIS 48189, *14 (S.D.N.Y. Mar. 15, 2021)("The Court is cognizant that surveillance videos from correctional facilities are highly 'sensitive' and must be treated as confidential for discovery purposes, because they may 'provide information . . . that could be used to exploit potential gaps in surveillance,' such as 'the geographical layout of the jail, the location of the cameras, [and] the view from the cameras.'" "Indeed, courts have found good cause to restrict public access to footage capturing 'the manner in which officers respond[] to . . . incidents [at prisons] and the techniques used to gain control of [inmates],' which 'could be used by inmates to create a disturbance or uprising, or attempt to escape,' or might otherwise compromise the safety of facility staff, inmates and the public.")(collecting cases).

4

Those reasons are and remain legitimate concerns, and they legitimately serve as the basis for the Court's protective order. *See* (Doc. 129)("granting the protective order for the reasons stated in the underlying motion, ECF No. 128").

The ALCU does not file a motion seeking modification of that protective order, nor does it even address (let alone refute) the safety and security reasons at issue. Instead, it asks the Court to provide access to videos the Court no longer possesses. It appears the ACLU filed the wrong motion. At the very least, it has failed to establish its high burden of showing good cause why the videos should be ordered disclosed in the face of a protective order prohibiting just that. The Court should either deny the ACLU's motion outright, or alternatively, the Court should deny the emergency relief sought and re-instate its prior briefing schedule allowing the defense until and including January 10th, to respond with a second objection and a memorandum of law in response to the ACLU's letter (Doc. 135) and motion (Doc. 137).

3. **Alternatively, even if the Court were to deny the defendant further briefing, and were the Court to not sustain the defendant's objections in whole, and were to grant the ACLU's motion, it should be done only in limited part and should protect the safety and security concerns acknowledged in the protective order.**

As stated above, the Court should allow the defendant until and including January 10, 2025, to submit a second objection and memorandum of law. However, even if the Court did not allow that, and did not sustain the defendant's current

objections in whole, in that even the Court should only grant the ACLU's motion in part.

For example, were the motion to be granted in part over objection, the access or review must take steps to limit jeopardy to safety and security detailed in the protective order and related motion. The ACLU (and members of the public) cannot be provided their own copies of the videos, nor be allowed their own control over the videos or viewing. The videos cannot end up on the internet or be possessed or maintained in an unsupervised manner. The videos show the inside of the Garner prison, including its restrictive housing unit. The surveillance cameras include showing where blind spots are located, which is dangerous if it is made public and or viewed in an unsupervised manner. Further, the handheld videos show the layout of the prison facility as people walk through different parts of Garner. The layout and blind spots of a prison—especially a Level 4 security facility like Garner—pose obvious safety and security threats. Courts regularly issue protective orders and other orders to protect these concerns. The Court can and may issue such orders under its inherent authority.

If the Court overrules the defendants objections without allowing (necessary) further research and briefing from the defense, the defendant prays that the Court's order allow only for the ACLU's attorney(s) to view the video in a controlled setting, either at the Court or at the Office of the Attorney General, and order that no persons viewing the video be allowed to record or reproduce it, and order that all

6

persons that view the video sign and log and sign a document agreeing to be subject to the Court's protective order and other related orders in this case. Such measures would limit risk to safety and security, as opposed to unsupervised release of the videos that would put peoples' safety and security at serious risk.

**WHEREFORE**, the Court should allow the defendant until and including January 10, 2025, to submit a second objection and memorandum of law opposing the ACLU's letter and motion, which the defendant would have been entitled to do absent the ACLU's baseless "emergency" designation of their motion that has prejudiced the defendant. Or, the Court should simply deny the ACLU's letter and motion outright; the Court has already ruled on the safety and security issues and the parties' use of the videos *via* its Protective Order (Doc. 129), which remains in effect and the merits and justifications of which the ACLU wholly and entirely ignores in its papers.

Alternatively, were the Court to grant the ACLU any relief, it should be limited and should take measures to continue to protect the safety and security interests underlying the protective order that remains currently in effect and that the ACLU has not moved to modify, such as supervised viewing at the Court or at the Office of the Attorney General as detailed above.

*Respectfully submitted,*

DEFENDANT

WILLIAM TONG
ATTORNEY GENERAL


BY:__/s/_*Stephen R. Finucane*_____
    Stephen R. Finucane
    Assistant Attorney General
    165 Capitol Avenue
    Hartford, CT  06106
    Federal Bar #ct30030
    E-Mail:  stephen.finucane@ct.gov
    Tel: (860) 808-5450
    Fax: (860) 808-5591


## CERTIFICATION

I hereby certify that on December 20, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

    __/s/_*Stephen R. Finucane*_____
    Stephen R. Finucane
    Assistant Attorney General